HANSON BRIDGETT LLP
SANDRA L. RAPPAPORT, SBN 172990
srappaport@hansonbridgett.com
JOSUE APARICIO, SBN 322750
japaricio@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777-3200
Facsimile:      (415) 541-9366

*Attorneys for Defendant*
KENSINGTON SENIOR LIVING, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EMILY TOLOSA, on behalf of herself and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KENSINGTON REDWOOD CITY LLC, a Virginia Limited Liability Company; KENSINGTON SENIOR LIVING, LLC, a Virginia Limited Liability Company; and DOES 1-50, Inclusive,<br><br>Defendants. | Case No.<br><br>**DEFENDANT KENSINGTON SENIOR LIVING, LLC'S NOTICE OF REMOVAL – CLASS ACTION** |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF EMILY TOLOSA AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant KENSINGTON SENIOR LIVING, LLC ("Defendant" or "KSL") hereby removes to this Court the state court action described below, pursuant to 28 U.S.C. §§ 1331, 1332(d)(2), 1441, 1446 and 1453. In support thereof, Defendant states as follows:

## I. PLEADINGS AND PROCEEDINGS TO DATE

1. On June 2, 2021, Plaintiff EMILY TOLOSA ("Plaintiff") filed this putative class action in the Superior Court of the State of California for the County of San Mateo, entitled *Emily*

*Tolosa v. Kensington Redwood City, LLC, et al.*, Case No. 21-CIV-03030.

2. Plaintiff's Complaint asserted the following eight causes of action: (1) Violation of the Unfair Competition Law; (2) Failure to Pay Minimum Wages; (3) Failure to Pay Overtime Wages; (4) Failure to Provide Required Meal Periods or Compensation in Lieu Thereof; (5) Failure to Provide Required Rest Periods or Compensation in Lieu Thereof; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Provides Wages When Due; and (8) Violation of the Private Attorneys General Act. A true and correct copy of Plaintiff's Class Action Complaint is attached hereto as **Exhibit A** ("Complaint" or "Compl.")

3. On June 2, 2021, the San Mateo Superior Court issued a Summons, and a Notice of Assignment For All Purposes (Civil) and Notice of Case Management and Trial Setting Conference.

4. On June 2, 2021, Plaintiff filed a Civil Case Cover Sheet with the San Mateo Superior Court.

5. On June 11, 2021, Plaintiff mailed a copy of the Complaint and Summons to Defendant's Agent for Service of Process, Brian Seltzer.

6. On June 14, 2021, Plaintiff filed a Proof of Service of Summons indicating Plaintiff served Defendant by substitute service by leaving a copy of the Summons and Complaint with a receptionist on June 10, 2021, and subsequently mailing a copy of the Complaint and Summons to Defendant's Agent for Service of Process, Brian Seltzer.

7. On June 21, 2021, Plaintiff's service on Defendant was deemed effective pursuant to Code of Civil Procedure § 415.20(a).

8. On June 24, 2021, the San Mateo Superior Court issued Case Management Order No. 1.

9. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in or issued by the Superior Court for the State of California, County of San Mateo or served by any party other than as described above. In compliance with 28 U.S.C. § 1446(a), true and correct copies of the above-referenced documents are attached hereto as **Exhibits A and B**.

10. On July 16, 2021, Defendant filed an Answer to Plaintiff's Complaint in San Mateo County Superior Court. A true and correct copy of Defendant's Answer is attached hereto as **Exhibit C.**

## II.  VENUE IS PROPER

11. Plaintiff filed the Complaint in the Superior Court for the State of California, County of San Mateo, which is within this judicial district and division. (*See* 28 U.S.C. § 84(a).) This Court is thus the proper court for removal under 28 U.S.C. § 1441(a).

## III.  LEGAL STANDARD FOR REMOVAL

12. The United States Supreme Court, in *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81 (2014), clarified the standards applicable to notices of removal in CAFA cases, confirming a liberal standard in favor of a removing defendant. Specifically, the Supreme Court found that the similarity of language between the removal statute and Rule 8(a) can only mean that the same liberal pleading standards applied to complaints must also apply to notices of removal. (*Id*., at pp. 81-82.)

13. The Supreme Court also held in *Dart* that a removing defendant is not required to include evidence with its pleading in order to establish that the elements of federal subject matter jurisdiction are met. (*Id*. at pp. 86-87.) Only if the Court or another party challenges jurisdiction should the Court require a removing defendant to prove, under the applicable "preponderance" standard, that the jurisdictional requirements are met. "In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold … Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." (*Id*. at 89.)  In addition, there exists no presumption against removal in CAFA cases, because Congress enacted CAFA specifically "to facilitate adjudication of certain class actions in federal court." (*Id*.)

## IV.  STATEMENT OF JURISDICTION

14. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") 29 U.S.C. § 1332(d), which vests the United States district courts

with original jurisdiction of any civil action: (a) that is a class action with a putative class of more than a hundred (100) members; (b) in which any member of a class of plaintiffs is a citizen of a State different from any defendant; and (c) in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. (28 U.S.C. § 1332(d).)  CAFA authorizes removal of such actions in accordance with 28 U.S.C. §§ 1446 and 1453. As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by the filing of this Notice.

## V.   REMOVAL IS TIMELY

15. This Notice of Removal is timely. Under 28 U.S.C. § 1446(b), a notice of removal of a civil action must be filed within 30 days after service of the summons and complaint. (*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*. (1999) 526 U.S. 344, 347–348 [holding that the 30-day removal period runs from the service of the summons and complaint; mere receipt of the papers unattended by any formal service is insufficient to trigger the removal period].)

16. On June 21, 2021, Plaintiff's substitute service on Defendant became effective pursuant to Code of Civil Procedure § 415.20(a). Because Defendant filed this Notice of Removal within 30 days of service of the Summons and Complaint on June 21, 2021, this Notice of Removal is timely as a matter of law.

## VI.   PLAINTIFF ASSERTS A CLASS ACTION

17. Plaintiff brings this lawsuit as a class action. The Complaint itself is titled "CLASS ACTION COMPLAINT," Plaintiff states in the very first paragraph that she brings this action "on behalf of herself and all others similarly situated current and former employees," and further states that "PLAINTIFF brings this Class Action on behalf of herself and a California class." (Exh. A, Compl., at Caption, unnumbered opening paragraph, ¶ 6.) Accordingly, CAFA applies. (E.g., *Bodner v. Oreck Direct, LLC*, No. C 0604756, 2006 WL 2925691, at *3 (N.D. Cal. Oct. 12, 2006) [CAFA applies where "Plaintiffs' complaint alleges that the action is a class action, and recites the prerequisites to a class action under … California Code of Civil Procedure Section 382"].)

## VII.   MORE THAN 100 PUTATIVE CLASS MEMBERS

18. Plaintiff seeks to represent a class of "all individuals who are or previously were

employed by Defendant KSL and/or Defendant KRC in California and classified as non-exempt employees … at any time during the period beginning four (4) years prior to the filing of the filing of the Complaint and ending on the date as determined by the Court." (Exh. A, Compl., at ¶ 6.)

19. Although Plaintiff's Complaint does not allege a specific number of persons who meet the proposed class definition, based upon inspection of Defendant's employment records, the number of individuals collectively employed by Defendant KSL as non-exempt employees at the California facility at which Plaintiff was employed during the time period from June 2, 2017 to June 29, 2021 is 330 individuals. (**Exhibit D**, Declaration of Brian Hilton ("Hilton Decl."), at ¶ 4) Thus, as defined in the Complaint, the putative class exceeds 100.

## VIII. DIVERSITY OF CITIZENSHIP

20. CAFA's minimal diversity requirement is satisfied when "any member of a class of plaintiffs is a citizen of a State different from any defendant." (28 U.S.C. §§ 1332(d)(2)(A); 1453(b).) Minimal diversity of citizenship exists here because Plaintiff and Defendant KSL are citizens of different states.

### Plaintiff Is A Citizen Of California

21. Plaintiff's Complaint is silent as to her citizenship. (*See* Exh. A.) However, Defendant is informed and believes that Plaintiff was a citizen of the State of California at the time Plaintiff commenced this action and at the time of removal. Plaintiff's employment records with Defendant reflect that she lived, worked, and was physically present in California throughout her employment, which was from approximately March 2020 to July 2020. (Hilton Decl., at ¶ 3 *see Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) [residency creates a rebuttable presumption of domicile supporting diversity of citizenship].) In addition, Plaintiff alleges that she was employed by Defendant in San Mateo, California. (**Exh. A**, Compl., at ¶¶ 4-5.) Therefore, Plaintiff is presumptively a citizen of the State of California. (*See Ehrman v. Cox Communications, Inc*. (9th Cir. 2019) 932 F.3d 1223, 1228 [Finding that removing party's "jurisdictional allegations, which provided a short and plain statement of the parties' citizenships based on information and belief, satisfied [its] burden of pleading minimal diversity."].)

/ / /

**Defendant Is Not A Citizen Of California**

22.     KSL is a Virginia limited liability company ("LLC"), organized as such under the laws of the State of Virginia. (Hilton Decl., at ¶ 2) For diversity purposes, "an LLC is a citizen of every state of which its owners/members are citizens." (*Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).) At all times since Plaintiff commenced this lawsuit, KSL consisted of four individual members: David Faeder; Tiffany Tomasso; Steve Lampa; and Tanya Walker. (*Id.*) Currently and at all times since Plaintiff commenced this lawsuit, David Faeder, Tiffany Tomasso and Steve Lampa were domiciled in the state of Virginia, and Tanya Walker was domiciled in the District of Columbia. (*Id.*) Accordingly, KSL is a citizen of the state of Virginia and the District of Columbia.

23.     The citizenship of fictitious and unknown defendants is disregarded for purposes of establishing removal jurisdiction under 28 U.S.C. section 1332.  (28 U.S.C. §§ 1441(a), (b)(1); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) [unnamed defendants are not required to join in a removal petition].)

24.     Accordingly, minimal diversity under CAFA exists where, as here, Plaintiff, who is a citizen of California, is diverse from Defendant KSL, a citizen of Virginia and the District of Columbia. (*See* 28 U.S.C. §§ 1332(d)(2)(A).) This action may be removed by Defendant without the consent of all defendants. (28 U.S.C. § 1453(b).)

### IX.    THE AMOUNT IN CONTROVERSY FAR EXCEEDS 5,000,000[1]

25.     CAFA's $5,000,000 threshold for the "amount in controversy is not the same as the amount ultimately recovered." (*Lara v. Trimac Transp. Servs. Inc.*, No. CV 10- 4280-GHK JCx, 2010 WL 3119366, at *3 (C.D. Cal. Aug. 6, 2010).)  Rather, in assessing the amount in controversy, courts must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." (*Kenneth

---

[1] The alleged damage calculations set forth in the instant Notice of Removal are provided for purposes of removal only and based on the presumption of truth to which Plaintiff's allegations are entitled. Defendant denies that Plaintiff or any putative class member is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's claims and their alleged damages at every stage of this case.

*Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002).) The ultimate inquiry is what amount is put "in controversy" by the plaintiff's complaint, not what a defendant will actually owe. (*Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005). After all, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." (*Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).) Moreover, when a defendant's calculations are "relatively conservative, made in good faith, and based on evidence whenever possible," the court may find that the "[d]efendant has established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000." (*Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009).) As demonstrated below, Defendant's calculations are relatively conservative, made in good faith, based on evidence to the extent possible, and based on reasonable assumptions derived from the Complaint.

26. In calculating the amount in controversy, the claims of class members may be aggregated to determine whether the amount in controversy has been satisfied. (28 U.S.C. § 1332(d)(6).)

27. Plaintiffs' Complaint alleges that the total amount in controversy is under $5,000,000. (Exh. A, Compl., at ¶ 6.) However, as demonstrated herein, Plaintiff's allegations, when accepted as true, place more $5,000,000 in controversy in this lawsuit. By demonstrating that the amount in controversy exceeds the CAFA threshold, Defendant in no way concedes the validity of Plaintiff's claims in any respect or the likelihood that Plaintiff will obtain certification or recover anything.

**Alleged Overtime Violations**

28. With regard to Plaintiff's claim for unpaid overtime, Plaintiff alleges that she and the putative class members performed work for Defendant in excess of eight (8) hours in a day and forty (40) in a week without overtime compensation. (Exh. A, Compl., at ¶ 73.) Plaintiff further alleges that Defendant "unlawfully, and unilaterally round[ed] the time recorded in DEFENDANTS' timekeeping system for PLAINTIFF and the members of the CALIFORNIA CLASS in order to avoid paying these employees for all their time worked, including the

1  applicable overtime compensation for overtime worked." (Exh. A, Compl., at ¶ 11.)

2       29.   In this matter, there is a four-year statute of limitations for this claim. (Cal. Civ.
3  Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208.) Between the four (4) year period ranging
4  from June 2, 2017 to June 29, 2021, Defendant employed approximately 330 non-exempt
5  employees at its Redwood City location where Plaintiff worked. (Hilton Decl., at ¶ 4.) The
6  average regular hourly rate of pay of the 330 non-exempt employees who worked for Defendant at
7  the Redwood City location between June 2, 2017 to June 29, 2021 was $21.74. (*Id*., at ¶ 5.)

8       30.   Plaintiffs' allegations with respect to her overtime claims do not adequately state
9  the number of hours of overtime worked, the amount of overtime owed, or even whether the
10 putative class members were denied the whole of the time-and-a-half (1.5x) their regular rate
11 owed or, instead, whether they were paid straight time for hours worked beyond eight (8) or
12 twelve (12) in a day or forty (40) in a week. Accordingly, for purposes of these calculations,
13 Defendant assumes Plaintiff and the putative class are only seeking the remaining half-time of
14 their regular rate of pay. (Exh. A, Compl., at ¶¶ 72-87.)

15       31.   Based on a review of Defendant's employment records, between June 2, 2017 to
16 June 29, 2021, there were 30,045 hours worked in excess of eight (8) hours per shift. (Hilton
17 Decl., at ¶ 6.) Thus, the total potential amount in controversy for daily[2] overtime violations is
18 calculated as follows: 30,045 (number of hours worked in excess of eight (8) per shift between
19 June 2, 2017 to June 29, 2021) x $10.87[3] (0.5 of the $21.74 average hourly rate of pay for 330
20 non-exempt employees) = **$326,589.15.**
21 / / /

---

[2] This is a conservative estimate, as the calculations are based on the number of non-exempt employees that worked over 8 hours per day. Plaintiff also alleges that she and the putative class members were denied overtime pay when working in excess of 12 hours per day and/or 40 hours per week, so the amount of potential unpaid overtime actually far exceeds the numbers outlined herein.

[3] This rate interprets Plaintiff's allegations to mean that she and the putative class are only seeking overtime at the rate of 0.5 times the regular hourly rate based on the allegation that Plaintiff and the putative class members were not paid the "applicable overtime compensation for overtime worked." (Exh. A, Compl., at ¶¶ 11, 73.) To the extent Plaintiff's vague allegations are intended to claim that she and putative class members were not paid at all for their overtime hours worked, the amount in controversy for this cause of action would increase.

**Alleged Meal Period Violations**

32. For every day an employee works six (6) or more hours and the employer fails to provide a 30-minute uninterrupted meal period prior to their fifth of work, or works ten (10) or more hours and the employer fails to provide a second 30-minute uninterrupted meal period, the employee is entitled to a premium payment equal to a full hour of pay at the employee's regular rate of pay. (Lab. Code § 226.7(c).)

33. With respect to Plaintiff's meal period claim, Plaintiff alleges that she and the Putative Class Members did not receive compliant meal periods for working more than five (5) and/or ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period. (Exh. A, Compl., at ¶¶ 13, 15, 17, 21, 89.) And that Defendant failed to pay Plaintiff and Putative Class Members one additional hour of pay at the employee's rate of compensation for each work day that a compliant meal period was not provided. (Exh. A, Compl., at ¶ 90.) Plaintiff seeks to recover unpaid meal period premium payments. (Exh. A, Compl., at Prayer for Relief, ¶ 2.C.)

34. In this matter, there is a four-year statute of limitations for this claim. (Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208.) Between the four (4) year period ranging from June 2, 2017 to June 29, 2021, Defendant employed approximately 330 non-exempt employees at its Redwood City location where Plaintiff worked. (Hilton Decl., at ¶ 4.) The average regular hourly rate of pay of the non-exempt employees who worked for Defendant at the Redwood City location between June 2, 2017 to June 29, 2021 was $21.74. (*Id*., at ¶ 5.)

35. Based on a review of Defendant's employment records, between June 2, 2017 to June 29, 2021, there were 69,426 shifts where an employee worked over 6 hours per shift. (Hilton Decl., at ¶ 7.) Thus, the potential amount in controversy for *first*[4] meal period violations is calculated as follows: 69,426 (number of shifts worked that exceeded 6 hours between June 2, 2017 to June 29, 2021) x $21.74 (average hourly rate of pay for 330 non-exempt employees) =

---

[4] This is a conservative estimate, as the calculations are based on the number of non-exempt employees that worked over 6 hours per shift. Plaintiff also alleges that she and the Putative Class were denied a second meal break when they worked over 10 hours a shift, so the number of potential meal period violations actually far exceeds the numbers outlined herein.

$1,509,321.00.

**Alleged Rest Period Violations**

36. For every day an employee works three and a half (3.5) or more hours and the employer fails to provide at least a 10-minute uninterrupted rest period, or works six (6) or more hours and the employer fails to provide a second at least 10-minute uninterrupted rest period, the employee is entitled to a premium payment equal to a full hour of pay at the employee's regular rate of pay. (Lab. Code § 226.7(c).)

37. With respect to Plaintiff's rest period claim, Plaintiff alleges that she and the Putative Class Members did not receive compliant rest periods for working more than four (4) and/or six (6) hours per day because their rest periods were missed, late, short, interrupted, and/or otherwise denied by Defendant's managers. (Exh. A, Compl., at ¶¶ 14, 17, 21, 93.) And that Defendant failed to pay Plaintiff and Putative Class Members one additional hour of pay at the employee's regular rate of compensation for each work day that a compliant meal period is not provided. (Exh. A, Compl., at ¶ 94.) Plaintiff seeks to recover unpaid rest period premium payments. (Exh. A, Compl., at Prayer for Relief, ¶ 2.C.)

38. In this matter, there is a four-year statute of limitations for this claim. (Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208.) Between the four (4) year period ranging from June 2, 2017 to June 29, 2021, Defendant employed approximately 330 non-exempt employees at its Redwood City location where Plaintiff worked. (Hilton Decl., at ¶ 4.) The average regular hourly rate of pay of the non-exempt employees who worked for Defendant at the Redwood City location between June 2, 2017 to June 29, 2021 was $21.74. (*Id*., at ¶ 5.)

39. Based on a review of Defendant's employment records, between June 2, 2017 to June 29, 2021, there were 77,043 shifts where an employee worked over 3.5 hours per shift. (Hilton Decl., at ¶ 8.) Thus, the potential amount in controversy for *first*[5] rest period violations is calculated as follows: 77,043 (number of shifts worked that exceeded 3.5 hours between June 2,

---

[5] This is a conservative estimate, as the calculations are based on the number of non-exempt employees that worked over 3.5 hours per shift. Plaintiff also alleges that she and the Putative Class were denied a second rest period when they worked over 6 hours a shift, so the number of potential rest period violations actually far exceeds the numbers outlined herein.

-10-

2017 to June 29, 2021) x $21.74 (average hourly rate of pay for 330 non-exempt employees) = **$1,674,915.00.**

### Alleged Inaccurate Wage Statements

40. With respect to Plaintiff's inaccurate wage statement claims, she alleges, without qualification, that Defendant failed to provide Plaintiff and the Putative Class Members with complete and accurate wage statements. (Exh. A, Compl. at ¶¶ 17, 19, 99.) Under the Labor Code section 226, the penalty for non-compliant wage statements is $50 for the initial pay period in which a violation occurs and $100 for subsequent pay periods, up to maximum of $4,000 per affected employee. Claims for non-compliant wage statements are subject to a one-year statute of limitations. (Code Civ. Proc. § 340(a).)

41. During the one-year preceding June 2, 2021, Defendant employed approximately 142 non-exempt employees at its Redwood City, California location, who were collectively issued 2,441 wage statements. (Hilton Decl., at ¶ 10.) Accordingly, with a maximum of $4,000.00 at issue per employee, the amount in controversy for Plaintiff's inaccurate wage statement claim is **$237,000.00**.

### Alleged Minimum Wage Violations

42. With regard to Plaintiff's claim for minimum wage violations, Plaintiff broadly alleges that she and the putative class members were entitled to receive at least minimum wages for compensation and Defendant failed to pay Plaintiff and the putative class members at least minimum wages for all hours worked. (Compl., at ¶¶ 10, 15, 59-71.) Plaintiff's Complaint is devoid of any factual allegations supporting this claim and lacks any specificity, as it fails to even allege how many hours she and the putative class members worked without being compensated at least a minimum wage. However, it is reasonable to assume, at the very least, one hour of unpaid minimum wages for each class member during each pay period (or bi-weekly) during the relevant time period.

43. In this matter, there is a four-year statute of limitations for this claim. (Cal. Civ. Proc. Code § 338(a); Cal. Bus. & Prof. Code § 17208.) Between the four (4) year period ranging from June 2, 2017 to June 29, 2021, Defendant employed approximately 330 non-exempt

employees at its Redwood City location where Plaintiff worked. (Hilton Decl., at ¶ 4.) The average regular hourly rate of pay of the 330 non-exempt employees who worked for Defendant at the Redwood City location between June 2, 2017 to June 29, 2021 was $21.74. (*Id*., at ¶ 5.) In addition, between June 2, 2017 to June 29, 2021, Defendant's 330 non-exempt employees collectively worked approximately 19,656 workweeks or 9,828 pay periods. (*Id*., at ¶ 9.) Thus, the potential amount in controversy for the putative class members' alleged minimum wage violations is calculated as follows: 9,828 (number of pay periods Defendant's 330 non-exempt employees collectively worked between June 2, 2017 to June 29, 2021) x $21.74 (average hourly rate of pay for 330 non-exempt employees) = **$213,660.72.**

44.   Plaintiff also seeks statutory penalties pursuant to California Labor Code section 1197.1 (Exh. A, Compl., at ¶¶ 39, 46, 113), which provides for civil penalties of "$100 for each underpaid employee for each pay period for which the employee is underpaid" for the initial violation, and a $250 penalty for each subsequent violation. (Lab. Code § 1197.1(a).) Because Plaintiff's allegations support the assumption that she and the putative class did not receive minimum wages for all hours worked during each pay period, it is reasonable to assume that Plaintiff's Complaint places at issue penalties for each pay period within one year prior to the filing of the complaint. During the one-year preceding June 2, 2021, Defendant employed approximately 142 non-exempt employees at its Redwood City, California location, who collectively worked during 2,441 pay periods. (Hilton Decl., at ¶ 10.) Accordingly, the potential amount in controversy for the putative class members' statutory penalties under Section 1197.1 is calculated as follows: 142 (number of employees that potentially experienced an initial violation) x $100 (amount of statutory penalty for initial violation) + 2,299 (number of remaining pay periods Defendant's non-exempt employees collectively worked between June 2, 2020 to June 29, 2021) x $250 (amount of statutory penalty for each subsequent violation)= **$588,250.00**.

45.   Accordingly, based on the foregoing calculations, the total amount in controversy for Plaintiff's alleged minimum wage violations is: **$802,610.72.**

### Alleged Waiting Time Penalties

46.   With respect to Plaintiff's claim for waiting time penalties, Plaintiff alleges that she

and putative class members who terminated their employment with Defendant are entitled to penalties of 30 days' wages pursuant to California Labor Code section 203, for Defendant's alleged willful conduct in not paying all earned wages upon termination of employment. (Exh. A, Compl., at ¶¶ 71, 87, 107-108.)

47. California Labor Code section 203 provides that if an employer willfully fails to pay any wages of an employee who is discharged or who quits, the employer must continue to pay the wages of the employee, as a penalty, until the wages are paid or until an action for the wages is commenced, for a maximum of 30 days' wages. There is a three-year statute of limitations for such claims. (Labor Code § 203; *Pineda v. Bank of America, N.A.*, 50 Cal.4th 1389 (2010).)

48. Between June 2, 2018 and June 29, 2021, a total of 176 non-exempt employees were terminated or resigned from their positions at Defendant's Redwood City location where Plaintiff worked, and each of those separations occurred more than 30 days before the date of this filing. (Hilton Decl., at ¶ 11.) Thus, the amount in controversy for this claim is calculated as follows: $21.74 (average hourly rate) x 6 (conservative average number of hours worked per day)[6] x 30 (number of days) x 176 (number of terminated employees) = **$688,723.20.**

### Attorney's Fees

49. Attorney's fees may also be included in the amount in controversy where the underlying statute authorizes an award of fees. (*Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) *overruled on other grounds by Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345 (2013).) Here, Plaintiff is seeking attorney's fees with respect to all causes of action. (Exh. A, Compl., at Prayer for Relief at ¶ 4.c.)

50. The Ninth Circuit has recognized 25% as an appropriate benchmark for attorney's fee awards in class action cases. (*See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).) Under that benchmark, and based on the demonstrated amount in controversy for causes action one through seven, it is reasonable to place the attorneys' fees in controversy at 25% of the

---

[6] This is a conservative estimate, as the calculations are based on the number of non-exempt employees that worked 6 hours per day, as opposed to 8 hours per day for full-time employees, which would further increase this amount.

alleged damages, which would equal: **$1,289,789.77**.

### Plaintiff's Other Claims Further Increase the Amount in Controversy

51. Plaintiff seeks injunctive relief to ensure compliance with the alleged California Labor Code violations of which she complains. (Exh. A., Compl., at ¶¶ 30, 45, 47-48, 56, Prayer for Relief, ¶ 1.b.) While Defendant has not yet quantified the costs of compliance with any such injunction, this would also increase the amount in controversy. (*In re Ford Motor Co./Citibank*, 264 F.3d 952, 958 (9th Cir. 2011), see also *Pagel v. Dairy Farmers of Am., Inc*., 986 F.Supp.2d 1151, 1161 (C.D. Cal. 2013) [cost of complying with injunction may be aggregated for CAFA purposes].)

52. Plaintiff's Complaint also seeks "[s]uch other and further relief as the Court deems just and equitable." (Exh. A, Compl., at prayer for relief ¶¶ 4.b.) Although uncertain in amount, this open-ended relief sought by Plaintiff only serves to increase the amount in controversy. (*See, Lewis v. Exxon Mobil Corp*., 348 F. Supp. 2d 932, 932-43 (W.D. Tenn. 2004) [the "open-ended" relief sought by plaintiff, who prayed for "judgment to be determined by a jury, for all incidental, consequential, compensatory and punitive damages" established that her case met the amount in controversy requirement even though she pled in the complaint that she did not assert a claim in excess of $75,000].)

53. Accordingly, it is reasonable to assume that the amount-in-controversy in this case would even further exceed $5 million.

### Summary of Amount in Controversy

54. In sum, the allegations in Plaintiff's Complaint demonstrate that Plaintiff and the putative class place in controversy the following amounts:

| | | |
|---|---|---|
| a. | Overtime Violations: | $326,589.15 |
| b. | Meal Period Violations: | $1,509,321.00 |
| c. | Rest Period Violations: | $1,674,915.00 |
| d. | Wage Statement Penalties: | $237,000.00 |
| e. | Minimum Wage Penalties: | $802,610.72 |
| f. | Waiting Time Penalties: | $608,723.20 |

|   |   |   |   |
|---|---|---|---|
| g. | Injunctive Relief: | | Not included |
| h. | Other Relief: | | Not included |
| i. | Civil Penalties under the UCL: | | Not included |
| j. | Civil Penalties under PAGA: | | Not included[7] |
| | **SUB-TOTAL** | | $5,159,159.07 |
| k. | Attorney's Fees at 25%: | | $1,289,789.77 |
| | **GRAND TOTAL** | | **$6,448,948.84** |

## X.   CONCLUSION

WHEREFORE, Defendant respectfully requests that this action now proceed against it in this Court as an action properly removed.

DATED: July 20, 2021                                                    HANSON BRIDGETT LLP

By:   */s/ Josue Aparicio*
SANDRA L. RAPPAPORT
JOSUE APARICIO
*Attorneys for Defendant*
KENSINGTON SENIOR LIVING, LLC

---

[7] Plaintiff also asserts a PAGA claim as her eighth cause of action. Although Defendant does not concede that Plaintiff's PAGA claim has any merit, for purposes of determining the amount in controversy, Defendant asserts that the potentially recoverable penalties by Plaintiff would only add to the amount in controversy calculated above, which well exceeds the jurisdictional threshold under CAFA.