IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EMILY TOLOSA,<br><br>    Plaintiff,<br><br>    v.<br><br>KENSINGTON REDWOOD CITY LLC, et al.,<br><br>    Defendants. | Case No. 21-cv-05564-MMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND; VACATING HEARING** |

Before the Court is plaintiff Emily Tolosa's ("Tolosa") "Motion to Remand Action to State Court," filed August 19, 2021. Defendant Kensington Senior Living, LLC ("KSL") has filed opposition, to which Tolosa has replied.[1] Additionally, with leave of court, KSL filed a supplemental brief, to which Tolosa replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for determination on the parties' respective written submissions, VACATES the hearing scheduled for November 5, 2021, and rules as follows.

In her complaint, filed June 2, 2021 in state court, Tolosa, who alleges she formerly was jointly employed by defendants KSL and KRC, asserts, on her own behalf and on behalf of a putative class of other employees, eight state law claims, all arising out of two unwritten employment policies or practices. As to the first, Tolosa alleges that "[f]rom time to time" defendants "required" employees to "work without paying them for all the time they were under defendants' control," which work Tolosa describes as "work

---

[1] As to the additional defendant, Kensington Redwood City LLC ("KRC"), no proof of service has been filed and no appearance has been made on its behalf.

1  before and after the beginning of [a] shift," and that, when such "off-the-clock" work was
2  performed, defendants had a "uniform policy and practice" not to pay employees for such
3  work.  (See Compl. ¶¶ 10-11, 15.)  As to the second, Tolosa alleges, defendants required
4  employees to "carry communication devices, such as radios and/or walkie-talkies, on
5  them during their entire shifts," including during all meal and rest breaks, thereby causing
6  employees to remain "on-call and on-duty during what was supposed to be their off-duty
7  . . . period."  (See Compl. ¶¶ 13-14.)
8        On July 20, 2021, KSL removed the instant action, asserting the district court has
9  diversity jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).
10  Under CAFA, a district court has jurisdiction over a class action where "the matter in
11  controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs,"
12  see 28 § 1332(d)(2), "any member of [the] class . . . is a citizen of a State different from
13  any defendant," see 28 U.S.C. § 1332(d)(2), and the putative class membership is not
14  "less than 100," see 28 U.S.C. § 1332(d)(5)(B).  Here, it is undisputed that Tolosa is a
15  citizen of California (see Notice of Removal ¶ 21), and the Court finds KSL has
16  sufficiently shown it is a citizen of Virginia (see Hilton Decl. in Support of Supp. Brief
17  [Doc. 16-1] ¶¶ 1-3) and that the class consists of 330 persons (see Supp. Hilton Decl.
18  [Doc. 12-2] ¶ 1, 5]).[2]  The remaining question as to jurisdiction, to which the Court next
19  turns, is whether the amount in controversy exceeds $5,000,000.
20        Under CAFA, a removing defendant has the burden to "prove by a preponderance
21  of the evidence that the amount in controversy requirement has been met."  See Abrego
22  Abrego v. Dow Chemical Co., 443 F.3d 676, 683, 685 (9th Cir. 2006).  Here, KSL argues,
23  the amount in controversy is $6,646,573.59.  For the reasons stated below, however, the
24  Court finds the amount in controversy established by a preponderance of the evidence is,

---

[2] Contrary to Tolosa's argument, the two declarations of Brian Hilton ("Hilton"), the individual who offers evidence as to the location of KSL's offices and the content of its employment records, are not without adequate foundation, given Hilton's position as KSL's Vice President and his "access to and oversight of [KSL's] payroll and timekeeping materials," which records he personally reviewed.  (See id. ¶¶ 1-2.)

at best, $4,539,014.81.

First, as to the meal break claim (see Compl. ¶¶ 89-90), the Court finds KSL has sufficiently demonstrated the amount in controversy is $1,509,321.24 (69,426 shifts worked in excess of six hours x $21.74 average hourly rate), and, as to the rest break claim (see Compl. ¶¶ 93-94), the amount in controversy is $1,674,914.82 (77,043 shifts worked in excess of 3.5 hours x $21.74 average hourly rate).[3]  See Augustus v. ABM Security Services, Inc., 2 Cal. 5th 257, 273 (2016) (holding employer may not require employee to "remain on call" during breaks); Brinker Restaurant Corp. v. Superior Court, 53 Cal. 4th 1004, 1037 (2012) (holding "an employer must provide the employee with a meal period of not less than 30 minutes for workdays lasting more than five hours") (internal quotation, alteration, and citation omitted); id. at 1029 (holding "[e]mployees are entitled to 10 minutes rest for shifts from three and one-half to six hours hours in length").

Second, as to the "waiting time penalty" claim (see Def.'s Opp. at 19:16-17), i.e., the claim that defendants did not pay employees at the end of their employment all "wages" due, in particular "wages" due for "missed meal and rest breaks" (see Compl. ¶¶ 103-08), the Court finds KSL has sufficiently shown the amount in controversy as to former full-time employees is $550,919.86 (111 employees x 30 day statutory period x $21.74 average hourly rate x 7.61 average shift length) and that the amount in controversy as to former part-time employees is $295,903.14 (65 employees x 30 x $21.74 x 6.98 average shift length),[4] for a total of $846,823.  See Nishiki v. Danko Meredith, APC, 25 Cal. App. 5th 883, 893 (2018) (holding "waiting time" penalty is "the employee's daily wages for each day he or she remained unpaid up to a total of 30

---

[3] The facts on which KSL bases its calculations for these, and all other claims discussed below, are found in the Supplemental Declaration of Brian Hilton.

[4] A former part-time employee would only have a waiting time claim based on a missed meal or rest break if he or she worked three and a half hours on at least one day during his/her employment, i.e., the minimum period of work that would entitle the employee to one rest break.  As the average shift worked by each former part-time employee has been shown to be 6.98 hours, it appears more likely than not that each such employee worked three and a half hours on at least one day.

1  days").

2      Third, as to the claim that defendants provided employees with inaccurate

3  paychecks, in that, for example, the paychecks failed to show "missed meal and rest

4  periods" (see Compl. ¶¶ 97-99), the Court finds KSL has sufficiently shown the amount in

5  controversy is $237,000 ((142 wage statements x $50 penalty) + (2299 wage statements

6  x $100 penalty)). See Cal. Lab. Code § 226(e)(1) (providing each employee receiving

7  inaccurate paycheck entitled to "fifty dollars ($50) for the initial pay period in which a

8  violation occurs and one hundred dollars ($100) . . . for each violation in a subsequent

9  pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)").[5]

10      The total amount in controversy as to the above-discussed claims is

11  $4,268,059.06.  Consequently, as to the remaining claims for which KSL has endeavored

12  to calculate an amount in controversy, specifically, claims for overtime compensation,

13  payment of the minimum wage, and an award of attorneys' fees,[6] the remaining issue is

14  whether KSL has shown that amount totals at least $731,940.95.

15      With respect to the claim for overtime compensation (see Compl. ¶¶ 73-86), KSL

16  asserts the amount in controversy is $326,589.15, calculated by multiplying 30,045, the

17  number of hours its records reflect were worked in excess of eight hours per shift, by

18  $10.87, half the average hourly rate.  As explained by KSL, it understands Tolosa to be

19  claiming employees who were credited with more than eight hours of work were paid their

20  regular hourly rate for those additional hours rather than at the time-and-a-half rate

21  applicable to overtime work.  KSL, however, misreads Tolosa's complaint.  The overtime

22  compensation claim does not seek an additional sum for recorded hours, but, rather, full

23  payment for time worked off the clock, i.e., time not recorded, when such work was in

---

[5] As KSL explains, there were 28 pay periods during the applicable limitations period, and, accordingly, the maximum penalty an employee who worked during the entirety of the limitations period would receive is $2,750 ((1 x 50) + (27 x 100)).

[6] The complaint also includes a claim for injunctive relief and a claim under the Private Attorneys General Act.  As to those claims, KSL has not provided any amount in controversy.

excess of eight hours a day or forty hours in a workweek.  (See Compl. ¶¶ 10, 15.) Moreover, the complaint does not include facts suggesting the frequency by which employees worked off the clock, and KSL has not submitted any evidence that might otherwise indicate the claimed frequency.  See Abrego Abrego, 443 F.3d at 691 (observing defendant, prior to removal, may "develop in state court the facts necessary to support federal jurisdiction").

As to the claim for failure to pay minimum wages (see Compl. ¶¶ 59-70), KSL asserts the amount in controversy is $213,660.72, calculated by multiplying 9,828, the number of applicable pay periods, by $21.74, the average hourly rate.  As explained by KSL, it understands Tolosa to be claiming each employee was not paid for one hour of regular off-the-clock work every two weeks.[7]  Although, in this instance, KSL has not misread the complaint, its calculation is not based on any factual allegation as to frequency, nor has KSL submitted any evidence that might otherwise indicate the claimed frequency and length of such occurrences.  Additionally, even if KSL had been able to provide a reasonable estimate as to frequency, such figure would not be multiplied by the employees' regular rate of pay, but, rather, by the applicable minimum wage, which, during the class period, ranged from $10.50 to $14.00.  See https://www.dir.ca.gov/dlse/faq_minimumwage.htm.

Lastly, as to the claim for attorneys' fees, KSL argues the amount in controversy is 25% of the amount the putative class seeks on its substantive claims.  As the Ninth Circuit has held, however, even where it may be appropriate to use a "percentage-based method" to estimate the amount of claimed attorneys' fees, see Fritsch v. Swift Transportation Co., 899 F.3d 785, 796 n.6 (9th Cir. 2018), such percentage cannot be based on damages awarded on claims for which a state does "not allow recovery of attorneys' fees," such as, in California, "legal work relating to meal and rest breaks," see

---

[7] According to KSL, a pay period encompasses two weeks.  (See Def.'s Opp. at 19:5-8.)

id. at 796.  Here, even assuming KSL can rely on a percentage method, the amount in controversy would be limited to 25% of the amount in controversy KSL has shown is attributable to claims other than the meal and rest break claims, i.e., the claims for waiting time penalties and inaccurate paychecks.[8]  The amount in controversy as to those two claims is, as noted, $1,083,823, and 25% thereof is $270,955.75, which amount, when added to $4,268,059.06, the amount in controversy KSL has sufficiently demonstrated as to the substantive claims, totals $4,539,014.81, a figure below the requisite statutory minimum.

Accordingly, KSL has failed to show the Court has jurisdiction over Tolosa's complaint.

## CONCLUSION

For the reasons stated above, Tolosa's motion to remand is hereby GRANTED, and the above-titled action is hereby REMANDED to the Superior Court of California, in and for the County of San Mateo.

**IT IS SO ORDERED.**

Dated: November 3, 2021

MAXINE M. CHESNEY
United States District Judge

---

[8] The Court notes that, in Naranjo v. Spectrum Security Services, Inc., 40 Cal. App. 5th 444 (2019), the California Court of Appeal held that neither an inaccurate paycheck claim nor a waiting time penalty claim can be based on an employer's failure to pay the amount due to an employee not provided a meal or rest break, and, consequently, that no attorney's fees can be awarded on such claims.  See id. at 270-71. As the California Supreme Court has granted review of Naranjo, however, see Naranjo v. Spectrum Security Services, Inc., 455 P.3d 704 (Cal. 2020), the Court assumes, for purposes of the instant motion only, that, were Tolosa to prevail on her inaccurate paycheck and waiting time penalty claims, she would be entitled to an award of attorneys' fees.